**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JAMES ANTHONY DAVIS,                     )
                                          )          3:08-cv-00400-RCJ-VPC
          Plaintiff,                      )
                                          )
     v.                                   )          **REPORT AND RECOMMENDATION**
                                          )          **OF U.S. MAGISTRATE JUDGE**
BILL DONAT, *et al.*,                     )
                                          )
          Defendants.                     )          June 30, 2010
_____ )

     This Report and Recommendation is made to the Honorable Robert C. Jones, United States

District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.

§ 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#51).

Plaintiff opposed (#58), and defendants replied (#63).  Plaintiff also submitted a motion for summary

judgment (#31).  Defendants opposed (#47), and plaintiff did not reply.  For the reasons stated

below, the court recommends that defendants' motion for summary judgment (#51) be granted and

that plaintiff's motion for summary judgment (#31) be denied.

**I.  HISTORY & PROCEDURAL BACKGROUND**

     Plaintiff James A. Davis ("plaintiff"), a *pro se* prisoner, is currently incarcerated at High

Desert State Prison ("HDSP") in the custody of the Nevada Department of Corrections ("NDOC")

(#8).  Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging violations of the First,

Eighth, and Fourteenth Amendments, which allegedly occurred while he was incarcerated at Nevada

State Prison ("NSP").  *Id.*  On June 29, 2009, plaintiff filed his first amended complaint (#8).

Plaintiff named the following persons as defendants: Bill Donat, NSP Warden; James Baca, NSP

Associate Warden; Shell Zappettini, NSP Correctional Caseworker Specialist ; Dillyn Keith,

Correctional Caseworker Specialist; and Joy Trushenski, Correctional Caseworker Specialist.  *Id.*

     In count I, plaintiff alleges that defendants Keith, Zappettini, and Trushenski violated the

Equal Protection Clause of the Fourteenth Amendment, when they housed plaintiff, an African-

American, with a Cuban. *Id.*, p. 4. On May 29, 2008, defendants moved plaintiff to a cell in Unit 3 of NSP (#51, Ex. E). Plaintiff's cellmate was allegedly of Cuban descent.[1] According to plaintiff, he "didn't appreciate being in a cell with a Cuban, because Cubans cause too much problems . . . ." *Id.*, Ex. U. The next day, plaintiff spoke to defendant Zappettini and told her that he needed to move cells. Plaintiff claims that he told her, "[Y]ou have me in a cell with a Cuban, and I can't be in there with a Cuban, you know." *Id.* Ex. U, p. 24. Defendant Zappettini claims that plaintiff mentioned nothing about the threat of his allegedly Cuban inmate. *Id.*, Ex. G. Although the facts are not entirely clear, plaintiff claims that he was assaulted by his cellmate and another "Cuban" later that day. Plaintiff also claims that he never returned to his cell because he was taken immediately to administrative segregation.

In count II, plaintiff alleges that defendants retaliated against him for the exercise of his First Amendment rights. *Id.* p. 5. Specifically, he claims that defendants issued false charges against him in response to his complaints regarding his housing situation. According to defendants, plaintiff was placed in administrative segregation pending the investigation of his conduct toward defendant Zappettini (#58, pp. 14-15). According to plaintiff, upon his admission to administrative segregation, prison officials performed a strip search, and he refused to comply with the orders, claiming that it was sexual harassment. *Id.*, Ex. U, pp. 132-136. Plaintiff ultimately complied with the order, but prison officials subsequently charged him with disobedience, failure to follow rules and regulations, and delaying, hindering, and interfering with staff.

In count III, plaintiff alleges that defendants denied him clothing, toilet paper, soap, towels, socks, and food while in administrative segregation. *Id.* p. 6. In addition, plaintiff claims that defendants violated his due process rights by placing him in administrative segregation prior to any hearing. While in administrative segregation, plaintiff claims that NSP Correctional Officer Michael Cruse denied him basic necessities such as clothing, toilet paper, soap, towels, socks, and food (#8).

Plaintiff seeks in excess of eighty million dollars in compensatory damages, thirteen million

---

[1]    When asked how he knew his cellmate was Cuban, plaintiff responded that, based on his upbringing in New York, he "know[s] a Cuban or Puerto Rican anywhere" (#51, Ex. U., p. 30). Viewing the facts in a light most favorable to plaintiff, the court assumes that the cellmate was Cuban.

1   dollars in punitive damages, and $680,000 in legal fees.  *Id.* p. 9.   Plaintiff also requests that

2   defendants return his "boombox" or pay him fifty-four dollars, the value of the property.  *Id.*

3        The court notes that the plaintiff is proceeding *pro se*.  "In civil cases where the plaintiff

4   appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit

5   of any doubt."  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see*

6   *also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

7   ## II.  DISCUSSION & ANALYSIS

8   **A.   Discussion**

9        **1.   Summary Judgment Standard**

10        Summary judgment allows courts to avoid unnecessary trials where no material factual

11   disputes exist.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

12   The court grants summary judgment if no genuine issues of material fact remain in dispute and the

13   moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In deciding whether

14   to grant summary judgment, the court must view all evidence and any inferences arising from the

15   evidence in the light most favorable to the nonmoving party.  *Bagdadi v. Nazar*, 84 F.3d 1194, 1197

16   (9th Cir. 1996).  However, the Supreme Court has noted:

17              [W]e must distinguish between evidence of disputed facts and
             disputed matters of professional judgment.  In respect to the latter,
18           our inferences must accord deference to the views of prison
             authorities.  Unless a prisoner can point to sufficient evidence
19           regarding such issues of judgment to allow him to prevail on the
             merits, he cannot prevail at the summary judgment stage.
20
   *Beard v. Banks*, 548 U.S. 521, 530 (2006).  Where reasonable minds could differ on the
21
     material facts at issue, however, summary judgment should not be granted.  *Anderson v.*
22
     *Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).
23
24        The moving party bears the burden of informing the court of the basis for its motion,

25   and submitting evidence which demonstrates the absence of any genuine issue of material

     fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met
26
     its burden, the party opposing the motion may not rest upon mere allegations or denials in
27
     the pleadings but must set forth specific facts showing that there exists a genuine issue for
28

1    trial. *Anderson*, 477 U.S. at 248.  Rule 56(c) mandates the entry of summary judgment, after

2    adequate time for discovery, against a party who fails to make a showing sufficient to

3    establish the existence of an element essential to that party's case, and on which that party

4    will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

5    **B.    Analysis**

6    **1.    Count I: Equal Protection**

7    Defendants argue that plaintiff fails to present any evidence of discriminatory intent,

8    a necessary element of any equal protection claim (#51, p. 12).  Plaintiff maintains that

9    defendants "discriminated against him by placing him in a cell with a Cuban" (#58, p. 3).

10    "Prisoners are protected under the Equal Protection Clause of the Fourteenth

11    Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S.

12    539, 556 (1974).  To establish a violation, the prisoner must present evidence of

13    discriminatory intent. *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). "Intentional

14    discrimination means that a defendant acted at least in part *because of* a plaintiff's protected

15    status."  *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) (emphasis in

16    original) (citation omitted). "To avoid summary judgment, [plaintiff] 'must produce evidence

17    sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that

18    the decision was racially motivated.'" *Serrano*, 345 F.3d at 1082 (quoting *Bingham v. City

19    of Manhattan Beach*, 329 F.3d 723, 732 (9th Cir.2003) (citations and alterations omitted)).

20    Here, defendants maintain that plaintiff has not demonstrated any evidence of

21    discriminatory intent, and the court agrees.  In essence, plaintiff argues that the lack of

22    discriminatory intent fuels his claim because he believes that a race-blind decision in housing

23    inmates constitutes racial discrimination.  Plaintiff noted in his deposition that "when you

24    put a black person in a room with a white person or a Mexican or whatever the case may be,

25    that's the racial segregation – discrimination –excuse me, racial discrimination" (#51, Ex.

26    U, p. 31).  He further states that "[b]lacks don't stay in a room with Cubans.  You have to

27    stay with your own kind." *Id.*, Ex. U, p. 23.  However, the United State Supreme Court has

28    stated otherwise.   "Racial segregation, which is unconstitutional outside prisons, is

4

1  unconstitutional within prisons, save for 'the necessities of prison security and discipline.'"

2  *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (quoting *Lee v. Washington*, 390 U.S. 333 (1968)

3  (per curiam)); *see Johnson v. California*, 543 U.S. 499, 506-07 (2005).  Plaintiff does not

4  provide any facts to suggest that these circumstances required inmate segregation.  Therefore,

5  the court grants summary judgment on this claim to defendants.

6          **2.      Count II: Retaliation**

7          In count II, plaintiff alleges that defendants retaliated against him after he complained

8  of his cell assignment (#8, p. 6).  Defendants argue that plaintiff cannot demonstrate that

9  such actions were taken in response to constitutionally protected conduct.

10         "A prison inmate retains those First Amendment rights that are not inconsistent with

11  his status as a prisoner or with the legitimate penological objectives of the corrections

12  system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  "Of fundamental import to prisoners

13  are their First Amendment 'rights to file prison grievances . . .'" *Rhodes v. Robinson*, 408

14  F.3d 559, 567 (9th Cir. 2005) (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003)).

15  "Because purely retaliatory actions taken against a prisoner for having exercised those rights

16  necessarily undermines those protections, such actions violate the Constitution quite apart

17  from any underlying misconduct they are designed to shield."  *Id.*  "Within the prison

18  context, a viable claim of First Amendment retaliation entails five basic elements: (1) An

19  assertion that a state actor took some adverse action against an inmate (2) because of (3) that

20  prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his

21  First Amendment rights, and (5) the action did not reasonably advance a legitimate

22  correctional goal." *Rhodes*, 408 F.3d at 567-68.

23         Here, plaintiff alleges that he was sent to administrative segregation because he spoke

24  out regarding his housing assignment (#8, #58, pp. 3-4).  Defendants contend that plaintiff

25  was initially placed in administrative segregation for the conduct he exhibited toward

26  defendant Zappettini (#51, p. 15).  In other words, plaintiff's behavior, not the voicing of a

27  grievance, led to his placement in administrative segregation.  As for plaintiff's retention in

28  administrative segregation, defendants note that plaintiff's notice of charges was filed due

1   to his failure to comply with prison officials' orders with respect to an unclothed body

2   search, not due to his First Amendment activity.   *See* # 51, Ex. I.   Other than general

3   allegations, plaintiff does not present any evidence to demonstrate that his placement in

4   administrative segregation was the result of protected conduct.   *See* #58.   Plaintiff fails to

5   present one issue of fact with respect to this element. *See Pratt v. Rowland*, 65 F.3d 802, 806

6   (9th Cir. 1995) (noting that plaintiff bears the burden of pleading and proving the absence

7   of legitimate correctional goals for the conduct of which he complains). Therefore, the court

8   grants summary judgment on all claims in count II.

9         **3.       Count III: Eighth Amendment & Fourteenth Amendment**

10        Plaintiff's complaint addresses two types of Eighth Amendment claims, one for

11   failure to ensure his safety and the other for the conditions of confinement in administrative

12   segregation (#8, p. 6).   The court addresses both below.

13              **a.       Eighth Amendment: Failure to Protect**

14        Plaintiff first alleges that defendants failed to protect his safety by housing him in a

15   cell with a Cuban cellmate.   *Id.* p. 4.   In addition, plaintiff claims that defendants failed to

16   protect his safety by failing to move him from the cell he had shared with a Cuban.

17   Defendants argue that plaintiff has failed to produce facts with respect to essential elements

18   of the claim (#51, pp. 16-18).

19        Prison officials have a duty to take reasonable steps to protect inmates from physical

20   abuse. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  To establish a violation of this duty,

21   the prisoner must establish that prison officials were "deliberately indifferent to a serious

22   threat to the inmate's safety."   *Id.* at 834.   The failure of prison officials to protect inmates

23   from attacks by other inmates may rise to the level of an Eighth Amendment violation when:

24   (1) the deprivation alleged is "objectively, sufficiently serious" and (2) the prison officials

25   had a "sufficiently culpable state of mind," acting with deliberate indifference.   *Id.* at 834;

26   *see Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995).  Thus, there is both an objective

27   and subjective component to an actionable Eighth Amendment violation. *Clement v. Gomez*,

28   298 F.3d 989, 904 (9th Cir. 2002).

The objective standard requires that "the deprivation alleged must be 'sufficiently serious.'" *Id.* at 834, *quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "What is necessary to show sufficient harm for the purposes of the Cruel and Unusual Punishment Clause depends on the claim at issue." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." *Id.* at 8.

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835, *quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. Mere negligence on the part of prison staff is not sufficient to prove deliberate indifference. *Id.* Essentially, acting or failing to act with deliberate indifference is "the equivalent of recklessly disregarding" a substantial risk of serious harm to the inmate. *Id.*

To prove deliberate indifference, the plaintiff must show that the prison official knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The plaintiff need not prove that the official believed the harm would actually befall the inmate; "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

Whether a prison official had the requisite state of mind is a question of fact, "subject to demonstration in usual ways, including inference from circumstantial evidence . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* An official will not escape liability if he has "refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 843 n.8. Conversely, prison officials may show that they are not liable because they did not know "the underlying facts indicating a sufficiently substantial danger, or that they knew the underlying facts but believed (albeit

1   unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.*

2   at 844.  A court should not rely solely on the fact that a prisoner failed to notify prison

3   officials of a risk of harm, but instead should look to whether the prisoner has established the

4   prison official's awareness through other relevant evidence. *Id.* at 848 (explaining that "the

5   failure to give advance notice is not dispositive").

6          Here, defendants Trushenski and Keith argue that plaintiff has only alleged that they

7   violated his constitutional rights by initially placing plaintiff into the cell with the Cuban

8   inmate.  By plaintiff's admission, he had no known enemies, and he had never reported any

9   specific concerns to his caseworker (#51, Ex. U, p. 17).  Plaintiff does not point to evidence

10  to demonstrate that defendants could have been aware of any substantial risk.  Nor can the

11  court find that the danger of housing an African-American with a Cuban constitutes an

12  "obvious" danger with respect to a constitutional wrong.  On that basis, the court grants

13  summary judgment to these defendants on this claim.

14         In addition, defendant Zappettini argues that she was not aware of the risk that

15  plaintiff allegedly faced.  For the sake of argument, she assumes plaintiff's facts to be true

16  and argues that she responded reasonably to any risk that plaintiff may have expressed.

17  Plaintiff asserts that on May 30, 2008, he told defendants Donat and Baca about his concerns

18  with his cellmate.  Then, he asserts that he "calmly and with respect, approached defendant

19  Shell Zappettini and stated that [he] needed a bed move and could not live in a cell with that

20  Cuban" (#58-2, p. 2).  He then returned to his unit (#51, Ex. U, pp- 49-50).[2]  Viewing the

21  facts in the light most favorable to plaintiff, the court assumes that plaintiff, at a minimum,

22  notified defendants of his issues with his cellmate.  However, plaintiff does not demonstrate

23  that defendants could view this as a "risk" nor does he demonstrate how defendants

24  disregarded any such "risk".  To that end, plaintiff fails to demonstrate how a "Cuban"

25

26         [2]      Plaintiff is unclear on how or when any assault occurred.  Plaintiff testified in his deposition
    that he never made it back to his cell because, at that time, prison officials escorted him to administrative
27  segregation (#58, Ex. U, pp. 49-50).  However, later in his deposition, plaintiff notes that he was assaulted
    by his cellmate and five "Cubans" in his cell after the discussion with defendant Zappettini and before being
28  escorted to administrative segregation.  *Id.*, p. 53.

8

1   represents a "substantial risk of serious harm."  Absent facts to indicate otherwise, the court

2   does not and will not assume that a person's racial or ethnic classification, in itself,

3   constitutes a "substantial risk of serious harm."    Therefore, the court grants summary

4   judgment for defendants on this claim.

5                   **b.      Eighth Amendment: Conditions of Confinement**

6          Plaintiff alleges that he was without the basic necessities during his time in

7   administrative segregation (#8, p. 6).  Defendants argue that they did not deny him basic

8   necessities (#58, p. 21).  Defendants also indicate that plaintiff has not implicated any of the

9   named defendants with the claim other than defendant Donat in his role as supervisor.  *Id.*

10  p. 24.

11         The Eighth Amendment prohibits cruel and unusual punishment of a person

12  convicted of a crime.   U.S. Const. amend. VIII.  The plaintiff must make two showings

13  when he or she challenges the conditions of confinement.  "Deprivations denying 'the

14  minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an

15  Eighth Amendment violation." *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

16  Prison officials have a duty to ensure that prisoners are provided adequate shelter, food,

17  clothing, sanitation, medical care, and personal safety.  *Keenan v. Hall*, 83 F.3d 1083, 1089

18  (9th Cir. 1996); *Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982).  The circumstances,

19  nature, and duration of a deprivation of these necessities must be considered in determining

20  whether a constitutional violation has occurred.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th

21  Cir. 2000).

22         Here, plaintiff alleges that he was denied clothing, toilet paper, soap, towels, socks,

23  and food.  These are deprivations which would clearly constitute an Eighth Amendment

24  claim.  However, plaintiff fails to tie these deprivations to any of the named defendants.  He

25  accuses NSP Correctional Officer Michael Cruse of directly denying him of these basic

26  necessities.  Plaintiff appears to believe that Mr. Cruse is a defendant in this case.  In his

27  opposition to defendants' motion for summary judgment (#58, p. 3), plaintiff refers to him

28  as "defendant," but there is nothing in the record that indicates that Mr. Cruse is or was a

                                        9

1   defendant in this action.  As for the named defendants in this case, plaintiff does not provide
2   any evidence that defendant Donat's role in the alleged deprivation was anything other than
3   a supervisory one.

4          Assuming that plaintiff has set out sufficient facts to proceed on an Eighth
5   Amendment claim based on Officer Cruse's actions, plaintiff's claim against defendant
6   Donat, in his role as NSP Warden, must meet certain requirements.  Under section 1983,
7   liability may not be imposed on supervisory personnel for the actions of their employees
8   under a theory of respondeat superior.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479
9   (1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  To maintain his claim against
10  defendant Donat, "the plaintiff must set forth some evidence that [defendant Donat] either:
11  [1] personally participated in the alleged deprivation of constitutional rights; [2] knew of the
12  violations and failed to act to prevent them; or [3] promulgated or implemented a policy so
13  deficient that the policy itself is a repudiation of constitutional rights and is the moving force
14  of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal
15  quotations omitted).

16         First, plaintiff does not allege nor demonstrate that defendant Donat personally
17  participated in the incident.  Second, plaintiff does not demonstrate that defendant Donat had
18  any knowledge of the alleged deprivation.  Although plaintiff allegedly sent kites, he does
19  not produce any evidence that those kites were sent or received.  Third, plaintiff's deposition
20  testimony appears to contradict any assertion that defendant Donat promulgated or
21  implemented an official policy.  Plaintiff notes that it was Officer Cruse, standing alone, who
22  refused to serve him meals (#51, Ex. U, p. 102).  In other words, plaintiff does not provide
23  issues of fact relating to the named defendants in this case.  Therefore, the court grants
24  summary judgment to defendants on this claim.

25         **c.     Fourteenth Amendment: Due Process**

26         Plaintiff claims that defendants violated his due procedural due process rights by
27  placing him in administrative segregation prior to any hearing (#8, p.6).  Plaintiff also
28  complains that he was "denied the right to produce witnesses in my favor at the segregation

1    hearing." *Id.*

2         To state a claim for a deprivation of procedural due process, a plaintiff must first

3    establish the existence of a liberty interest.  Once a plaintiff has met the threshold

4    requirement of pleading a liberty interest, the court then proceeds to analyze the amount of

5    process due. *Wolff v. McDonnell*, 418 U.S. 539 (1974).  As discussed below, plaintiff here

6    does not demonstrate that freedom from administrative segregation rises to the level of a

7    constitutionally protected liberty interest.

8         Liberty interests may arise from the Due Process Clause itself or from state law.

9    *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983).  The Due Process Clause itself does not

10   confer on inmates a liberty interest in being confined in the general prison population instead

11   of administrative segregation.  *See id.*  Liberty interests created by state law and prison

12   regulations are limited to freedom from restraint that "imposes atypical and significant

13   hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*,

14   515 U.S. 472, 484 (1995).  There is "no liberty interest in freedom from state action taken

15   within the sentence imposed" and "administrative segregation falls within the terms of

16   confinement ordinarily contemplated by a sentence." *May v. Baldwin*, 109 F.3d 557, 565

17   (9th Cir. 1997).

18        Under *Sandin*, a factual comparison must be made between the conditions in general

19   population and administrative segregation, "examining the hardship caused by the prisoner's

20   challenged action in relation to the basic conditions of life as a prisoner." *Jackson v. Carey*,

21   353 F.3d 750, 755 (9th Cir. 2003).  Courts consider three factors in undertaking this analysis:

22   (1) the prisoner's conditions of confinement; (2) the duration of the sanction; and (3) whether

23   the sanctions will affect the length of the prisoner's sentence. *Serrano v. Francis*, 345 F.3d

24   1071, 1078 (9th Cir. 2003).

25        Here, plaintiff alleges that defendants violated his due process rights by placing him

26   in administrative segregation prior to a hearing and that he was unable to call witnesses (#8,

27   p. 6).  It is clear that the Due Process Clause does not confer a right to be housed in the

28   general population. *See Hewitt*, 459 U.S. at 466-68.  With respect to the conditions between

11

general population and administrative segregation, plaintiff does not provide any indication that time in administrative segregation constitutes "atypical or significant hardship." Plaintiff has not provided any material facts concerning a deprivation of due process with respect to his removal prior to a hearing.

In addition, plaintiff alleges that "at the segregation hearing," he was denied the right to produce witnesses (#8, p. 6). Plaintiff appears to conflate the procedural safeguards in *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974), with his temporary placement in administrative segregation. However, even assuming that those procedural safeguards in *Wolff* applied to plaintiff here, the calling of witnesses is not a requirement that the prison must accommodate:

> [T]he unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution . . . Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence . . . There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents.

*Wolff*, 418 U.S. at 566-567.

Therefore, the court grants defendants summary judgment to the defendants on plaintiff's due process claim.

### 4.  Harassment During Strip Search

In his opposition to defendants' motion to dismiss, plaintiff asserts that NSP Correctional Officer J. Stanley violated his rights. Specifically, plaintiff alleges that Mr. Stanley "made [plaintiff] do sexual things to [himself]." Plaintiff asserted that Mr. Stanley "made [him] play with [his] privet [sic] parts and stretched it out for him and forced and orded [sic] me to masterbate [sic] for him and [plaintiff] told him no" (#58, p. 7).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.

12

1   Although the Supreme Court has suggested that prisoners do not have a legitimate

2   expectation of privacy, *Hudson v. Palmer*, 468 U.S. 517, 527 (1984), the Ninth Circuit has

3   held that the Fourth Amendment "extends to incarcerated prisoners; however, the

4   reasonableness of a particular search is determined by reference to the prison context."

5   *Thomas v. Souza*, 111 F.3d 694, 699 (9th Cir. 1997) (quoting *Michenfelder v. Sumner*, 860

6   F.2d 328, 332 (9th Cir.1988)).  Prisoners retain a very limited Fourth Amendment right to

7   shield themselves from being observed in the nude.  *See Michenfelder*, 860 F.2d at 333-34.

8   In general, strip searches are reasonable and thereby do not violate a prisoner's Fourth

9   Amendment rights, but those that are "excessive, vindictive, harassing" are not reasonable.

10  *See id.* at 332-33.

11        Here, plaintiff alleges that Mr. Stanley subjected him to a sexually harassing strip

12  search (#58, p. 7).  Viewing the facts in the light most favorable to plaintiff, he clearly states

13  a claim under the Fourth Amendment.  However, like Mr. Cruse above, plaintiff does not

14  name Mr. Stanley as a defendant in this case.  Therefore, the court cannot allow this claim

15  to proceed in this case.

16                              **III. CONCLUSION**

17        Based on the foregoing and for good cause appearing, the court concludes that there

18  is no genuine issue of fact as to whether defendants violated plaintiff's constitutional rights.

19  Equal protection does not require that prison officials house inmates with inmates of like

20  ethnicity.  Nor has plaintiff demonstrated any factual issue with respect to defendants'

21  alleged failure to protect.  With regard to the conditions of confinement claims, the court

22  finds that plaintiff has failed to produce any factual issue with respect to these defendants.

23  No reasonable jury could find that plaintiff has met his burden.

24        The court respectfully recommends that defendants' motion for summary judgment

25  (#51) be **GRANTED**, and that plaintiff's motion for summary judgment (#31) be **DENIED**.

26                          **IV.  RECOMMENDATION**

27        **IT IS THEREFORE RECOMMENDED** that defendants' motion for summary

28  judgment (#51) be **GRANTED**, and that plaintiff's motion for summary judgment (#31) be

                                     13

**DENIED**.

The parties are advised:

1.      Pursuant to 28 U.S.C.  § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within fourteen days of receipt.   These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**DATED**: June 30, 2010.

_____

**UNITED STATES MAGISTRATE JUDGE**

14